IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN ADAMS, | Civil Action No. 2:17-cv-00550 |
| Plaintiff, | The Honorable Cathy Bissoon |
| vs. | *Electronically Filed* |
| CITY OF GREENSBURG, THE GREENSBURG POLICE DEPARTMENT, SARGEANT JUSTIN GAIN (in his official capacity and as an individual), jointly and severally, PATROLMAN JASON DEITER (in his official capacity and as an individual), jointly and severally), GREENSBURG POLICE CAPTAIN, ROBERT STAFFORD (in his official capacity and as an individual), jointly and severally, MAYOR OF GREENSBURG, ROBERT BELL (in his official capacity and as an individual), jointly and severally, GREENSBURG CHIEF OF POLICE, CHAD ZUCCO (in his official capacity and as an individual), jointly and severally, | |
| Defendants. | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS**

Defendants, City of Greensburg, Greensburg Police Department, Sergeant Jason Gain, Patrolman Jason Dieter, Captain Robert Stafford, Mayor Robert Bell and Captain Chad Zucco, through their undersigned counsel, file the following Brief in Support of Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6).

**I.    PROCEDURAL HISTORY**

On or about April 27, 2017, Plaintiff, Justin Adams ("Plaintiff" or "Adams") filed a five-Count Complaint against the City of Greensburg, Greensburg Police Department,

{DocNo=00502973.2 }

Sergeant Jason Gain, Patrolman Jason Dieter, Captain Robert Stafford, Mayor Robert Bell and Captain Chad Zucco:

Count I of the Complaint posits causes of action under: (a) the Due Process Clause of the 14th Amendment; (b) the 4th Amendment; (c) 42 U.S.C. §§ 1985/1986; (d) Title VII of the Civil Rights Act; and (e) the Pennsylvania Human Relations Act.

Count II alleges a cause of action against all Defendants for "wrongful discharge: violation of public policy."

Counts III and IV allege a cause of action against all Defendants for "discrimination" and for "hostile work environment."

Count V alleges a cause of action against all Defendants for "intentional infliction of emotional distress."

## II.   FACTUAL BACKGROUND[1]

Plaintiff has been an accredited police officer since January of 2013. (Compl. ¶19) and is an African American male (Compl. ¶ 8).  Plaintiff has never been reprimanded, suspended, or written up as a police officer. (Compl. ¶ 10).  Plaintiff has had a spotless employment record at every police department he has been employed (Compl. ¶ 11) and his prior and current police employers can testify to Plaintiff's strong positive work ethic (Compl. ¶ 12).

On June 21, 2015, Plaintiff was hired through the civil service process by the Greensburg Police Department as a full time police officer. (Compl. ¶¶ 13, 15).  On or

---

[1] The following facts are alleged in the Complaint and are assumed to be true only for purposes of this Motion.  *See Zion v. Nassan*, 283 F.R.D. 247, 254 (W.D. Pa. 2010).

{DocNo=00502973.2 }

about June 28, 2015, Plaintiff was provided a Greensburg Police Department Standard Operating Procedure ("SOP") manual. (Compl. ¶ 14).

Plaintiff was immediately sent undercover to "African American beer gardens and told to 'buy drugs' (Compl. ¶ 17) and was ordered to identify African American suspects for other police officers" (Compl. ¶ 18). Plaintiff further alleges that Patrolman Deiter stated that Plaintiff was good at identifying "them" (African American suspects) because "they all look the same." (Compl. ¶ 19). During this period of "under cover" work Plaintiff continuously experienced similar comments specifically relating to his skin color being black. (Compl. ¶ 20). Plaintiff alleges that someone commented that "[t]here was one black guy here prior to you for a reason" (Compl. ¶ 21) and "[y]ou know that you can't talk like them while in uniform." (Compl. ¶ 22). Plaintiff began to feel very uncomfortable and increasingly alarmed by the racially hostile statements directed toward him. (Compl. ¶ 23).

After roughly a five week period, Plaintiff was placed in uniform and assigned a Field Training Officer ("FTO") (Compl. ¶ 24). Plaintiff's first FTO was Sergeant Cole, and this two-week experience was positive; Sergeant Cole's reports regarding Plaintiff reflected "good performance" and a need only for minimal improvements. (Compl. ¶¶ 25-34). Plaintiff's next FTO, Joshua Shapiro, also gave him "positive ratings" during their two-week training period. (Compl. ¶¶ 35-39).

Plaintiff's third FTO, Sergeant Jason Gain, gave Plaintiff a "very good report at the end" of the two-week FTO period and "also gave Plaintiff very good daily reports." (Compl. ¶¶ 41-43). Gain "was the only FTO that would publicly make reference to Plaintiff's racial status as an African American," (Compl. ¶ 49) and "his continuously pervasive remarks

{DocNo=00502973.2 }

3

about Plaintiff being black, made Plaintiff feel increasingly uncomfortable and threatened." (Compl. ¶ 50). Gain made "derogatory remarks about African Americans in front of Plaintiff's superiors." (Compl. ¶ 51). Plaintiff "felt that he had no recourse in preventing future racially derogatory remarks from Sergeant Gain" (Compl. ¶ 52) and "would avoid Sergeant Gain at every possible opportunity." (Compl. ¶ 53).

Patrolman Denning became Plaintiff's final FTO for a period of about six weeks. (Compl. ¶ 45). "Denning provided Plaintiff with outstanding daily reports, and also provided Plaintiff with a very good end of FTO report." (Compl. ¶ 46). Denning "showed Plaintiff a parking spot behind the welfare office, where Plaintiff could park in order to work on reports, and or 'take time to yourself,' so long as Plaintiff's work was completed." (Compl. ¶ 47). After this FTO period with Denning, Plaintiff began patrolling on his own." (Compl. ¶ 48).

The SOP states that any "official reprimand" is to be signed, placed into the employee's file, and that the "Chief of Police shall immediately notify the accused of any reprimands." (Compl. ¶¶ 54-55). The "SOP's disciplinary guidelines" apply to all officers, including those on probation, and require that officers "get a progress report in the form of performance evaluations every month, and the officer must sign." (Compl. ¶¶ 57-58).

"Plaintiff was never reprimanded for any disciplinary action." (Compl. ¶ 56). The "SOP also states that if a 'marginal' rating is expected, written notice of intent to discharge or suspend must be served on the employee 'not more than 15 and not less than 10 days prior to the last day of the probationary period.'" (Compl. ¶ 59). Plaintiff, however, "only received four performance evaluations and all evaluations fell within the average performance of every other officer." (Compl. ¶ 60).

{DocNo=00502973.2 }

4

Plaintiff alleges that Patrolman Deiter made the following inappropriate racial comments to him:

- September 2015 at a firearms training class: "You know that we don't hold our gun sideways when we shoot, right?". (Compl. ¶ 61).

- January 14, 2016: why could Plaintiff's "people" say the " 'N' word?" (Compl. ¶ 63).

- April 9, 2016: "It's embarrassing to us when you play that kind of stuff [hip-hop music] when coming to work. You're a cop, you should know better, it makes us all look bad." (Compl. ¶ 71).

- Unidentified date: In the breakroom for dinner, "I bet you are disappointed that it is not fried chicken!" (Compl. ¶ 75).

On February 1, 2016, Sergeant Gain stated "[t]hey could if they weren't so busy doing drugs, and getting arrested, most of 'them' have criminal records" in response to Plaintiff's statement that more blacks should join the police force. (Compl. ¶ 66). Plaintiff also alleges that on February 6, 2016, Gain, Patrolman McAtee and/or Deiter said: "If a black guy needs shot here, our guy (i.e., the Plaintiff) is going to have to do it so we don't make the news!" (Compl. ¶ 67).

Plaintiff was no longer comfortable "in the presence of Officer Deiter and Sergeant Gain without experiencing a great deal of emotional stress" (Compl. ¶ 69) and his "work performance begun to suffer because of the isolation and verbal and emotional harassment based on his skin color." (Compl. ¶ 70). Plaintiff "felt that his superior officers condoned the racial abuses that were perpetrated against the Plaintiff." (Compl. ¶ 78). Plaintiff "quietly requested from his superiors relief from the increasingly frequent racial harassment and emotional distress he was experiencing" at "various times." (Compl. ¶ 79).

On April 27, 2016, Plaintiff met with Chief Zucco in the presence of Lt. Jones and Captain Stafford. (Compl. ¶¶ 80-81). "Chief Zucco stated that Plaintiff was not going to make it off probation and that Plaintiff was terminated immediately." (Compl. ¶ 82). Chief Zucco said his decision could not be appealed and "the department did not have to follow the SOP disciplinary procedure" since "Plaintiff was on probation." (Compl. ¶ 83).

On April 28, 2016, Plaintiff met with Patrolman Scalzo who "provided Plaintiff with a police department letter that listed nine reasons why Plaintiff was terminated." (Compl. ¶¶ 84, 85). Plaintiff, however, had not been written up or reprimanded "for any of the nine alleged reasons" as required by the SOP." (Compl. ¶ 86).

Plaintiff asserts that he "ha a constitutionally protected right to work without being racially insulted by co-workers" (Compl. ¶ 104) and "was told by his co-workers that his race is composed of drug users and addicts and generally are a group of criminals, and many other intentionally insulting, humiliating and hostile statements and racial accusations" (Compl. ¶ 105). Plaintiff alleges that his "supervisors had a duty to act in preventing such racially motivated verbal attacks on Plaintiff, especially when they were physically present when some of the racially hostile statements and comments were directed towards Plaintiff." (Compl. ¶ 106). Plaintiff seeks reinstatement, back pay, benefits, non-economic damages, attorney's fees and costs.

### III.  STANDARD OF REVIEW

*Rule 12(b)(6).*  The Third Circuit Court of Appeals has summarized the standard to be applied in deciding motions to dismiss filed under Rule 12(b)(6):

> Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plan statement of the claim showing that the pleader is entitled to relief.'  As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 [129 S. Ct. 1937] (2009), a claimant must state a 'plausible' claim for relief, and '[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconducted alleged.' Although '[f]actual allegations must be enough to raise a right to relief above the speculative level,' *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff 'need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element.' *Fowler [v. UPMC Shadyside*,] 578 F.3d [203,] 213 [(3d Cir. 2009)] (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117-18 (3d Cir. 2013).

*Thompson v. Real Estate Mortgage Network*, 748 F.3d 142, 147 (3d Cir. 2014).

"[W]hen presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis." *Fowler*, 478 F.3d at 210.  "First, the factual and legal elements of a claim should be separated." *Id.* at 211. "Second, a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 211 (*citing Iqbal*, 129 S. Ct. at 1950).  "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (*citing Iqbal*, 129 S. Ct. at 1949).  A complaint has to "show" such an entitlement with its facts. *Id.* (*citing Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.*  Complaints that merely provide "[t]hreadbare recitals of the elements of a cause of action, supported by mere

{DocNo=00502973.2 }

7

conclusory statements" or "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not withstand a motion to dismiss.  *Id.* at 1949-50.

The plausibility standard is not akin to a "probability requirement," but it asks for more than a mere possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 1949 (*citing Twombly*, 550 U.S. at 556-557).  "The determination of whether a complainant has sufficiently pled a claim 'is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Pekar v. U.S. Steel/Edgar Thomson Works*, Civil Action No. 09-844, 2010 WL 419421, *4 (W.D. Pa. Jan. 29, 2010) (*citing Iqbal,* 129 S. Ct. at 1950).

*Rule 12(b)(1).*  "Federal Rule of Civil Procedure 12(b)(1) "provides that a court may dismiss a case for lack of subject matter jurisdiction." *Cooper v. Southeastern PA Transp. Auth.*, 699 F. Supp. 2d 690, 692 (E.D. Pa. 2010) (*citing* Fed. R. Civ. P. 12(b)(1).  "The plaintiff has the burden of establishing subject matter jurisdiction."  *Id.* (*citing Carpet Group Int'l v. Oriental Rug Imp. Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000)).  "A Rule 12(b)(1) motion may present either a facial or factual challenge to subject matter jurisdiction." *Id.* "'A challenge to a complaint for failure to allege subject matter jurisdiction is known as a 'facial' challenge, and must not be confused with a 'factual' challenge contending that the court in fact lacks subject matter jurisdiction, no matter what the complaint alleges . . . .'" *Id.* (*quoting N.E. Hub Partners, L.P. v. CNG Transmission Corp.,* 239 F.3d 333, 341 n. 7 (3d Cir. 2001)).

## IV. ANALYSIS

### A. Count I: Plaintiff Has Failed To Set Forth A Plausible Due Process Claim Under the Fourteenth Amendment.

To state a procedural due process claim, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty or property, and (2) the procedures available to him did not provide due process of law." *Iles v. de Jongh*, 638 F.3d 169, 173 (3d Cir. 2011) (quoting *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009)).

Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972). Whether a plaintiff has a legitimate entitlement to a government job is a question answered by state law. *Hill v. Borough of Kutztown,* 455 F.3d 225, 234 (3d Cir. 2006) (Internal quotations omitted.).

In Pennsylvania, "[p]robationary police officers have neither a property interest in their employment, nor an absolute right to a pre- or post-termination hearing." *Bartal v. Borough of Laureldale*, 515 F. Supp. 2d 556, 562 (E.D. Pa. 2007).  As cited and quoted by the Court in *Bartel*:

> The very notion of probationary employment sets those employees apart from the others, signaling that they are new, newly transferred or newly promoted and that they must prove themselves in the new position before being considered permanently employed therein.  Implicit in the term probationary is that the employee is being tested or evaluated on the job.

*Olson v. Borough of Avalon,* 811 A.2d 66, 71 (Pa. Commw. Ct. 2002) (citing *Upper Makefield Twp. v. Pennsylvania Labor Relations Bd.,* 753 A.2d 803, 806 (Pa. 2000) (Internal citations omitted.))

Because Plaintiff is unable to establish a property interest in his employment, he has failed to advance a viable due process claim under the Fourteenth Amendment. Dismissal is appropriate. *Bartal*, 515 F. Supp. 2d at 562.

### B. Count I: Plaintiff Has Failed To Set Forth A Plausible Fourth Amendment Claim.

According to Paragraph 116 of the Complaint: "Because Plaintiff was terminated unlawfully, Plaintiff's job was seized by Defendants." The Fourth Amendment protects against unlawful searches and seizures. *Brower v. County of Inyo,* 489 U.S. 593, 596–97 (1989) ("[A] Fourth Amendment seizure [occurs] ... when there is a governmental termination of freedom of movement through means intentionally applied."). A "seizure" means either (1) "a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful," or (2) submission to the "assertion of authority." *California v. Hodari D.,* 499 U.S. 621, 626 (1991).

In the employment context, a colorable Fourth Amendment case may arise where a governmental employer accesses or takes possession of an employee's private property. *O'Connor v. Ortega*, 480 U.S. 709 (1987). In a rare case, an employee may argue that physical work restrictions or conditions imposed by a governmental employer constituted a seizure. See *Myers v. County of Somerset*, 515 F. Supp. 2d 492 (D. N.J. 2007) (employee's assignment to "a 'small room with no windows and an exposed ceiling', did not constitute a seizure . . . It was simply a job assignment.").

By comparison, an employee's discharge from employment falls outside of the ambit of the Fourth Amendment as it does not involve a search or seizure. Defendants are unaware of any legal authority that analogizes, let alone equates, a job termination with a "seizure" under the Fourth Amendment. Plaintiff's claim under the Fourth Amendment should be dismissed.

### C. Count I: Plaintiff Has Failed To Set Forth Plausible Conspiracy Claims Under 42 U.S.C. §§ 1985 and 1986.

Plaintiff has failed to set forth any plausible claim for conspiracy under federal law. As alleged in Paragraph 114, "a constructive conspiracy was present between all Defendants." "[T]o state a claim under section 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir. 1997) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102–03 (1971)). Because allegations about the period of conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy must be particularized, conclusory allegations are insufficient. *Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003); *see also Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000).

Plaintiff does not set forth factual allegations to substantiate a conspiracy theory. Instead, he alleges that Patrolman Deiter made offensive remarks on approximately four occasions. (Compl. ¶¶ 19, 61, 63, 71-72). Plaintiff alleges that Sergeant Gain was his FTO for about two weeks and gave him "a very good report at the end of Plaintiff's FTO period," but made a racially offensive statement on February 1, 2016, and perhaps on

{DocNo=00502973.2 }

other occasions. (Compl. ¶¶ 49-51, 66-67). Plaintiff avers that Sgt. Stafford was present when Deiter made the alleged offensive remark in September 2015 (Compl. ¶ 61) and when Chief Zucco informed Plaintiff of his termination on April 27, 2016. (Compl. ¶¶ 80-83). No other well-pleaded factual allegations are made regarding the named individual Defendants.

The material facts in the Complaint do not establish a mutual agreement or conspiracy between two or more of the individual Defendants to violate Plaintiff's rights, and the conclusory statements do not suffice to state a claim. *Grigsby v. Kane*, 250 F. Supp. 2d 453, 458. Specific allegations of an agreement to carry out the alleged chain of events is essential in stating a claim for conspiracy. *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000); *Spencer v. Steinman,* 968 F. Supp. 1011, 1020 (E.D. Pa. 1997) ("It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism.");. *Rosembert v. Borough of East Lansdowne*, 14 F. Supp. 3d 631, 648 (E.D Pa. 2014) ("A lack of agreement is fatal to the conspiracy claims under section 1983 and section 1985.").

The use of boilerplate language does not furnish a basis for a conspiracy theory to advance beyond the pleading stage. *Walsh v. Quinn*, No. 08-3884, 2009 WL 1241624, at *2 (3d Cir. May 7, 2009) ("Mere allegations of joint action or a conspiracy are not sufficient to survive a motion to dismiss."); *see also Dixon v. Elmore*, No. 12-1180, 2012 WL 5830629, *5 (W.D. Pa. Oct. 25, 2012) *adopted by* 2012 WL 5830615 (W.D. Pa. Nov. 16, 2012) (granting dismissal where plaintiff advanced conclusory statements that "fail to contain any facts to suggest a plausible conspiracy claim under Section 1985.").

Additionally, the City is incapable of committing a conspiracy as a municipal corporate cannot conspire with one of its agents. *Bair v. Purcell,* 500 F. Supp. 2d 468, 501 n. 28 (M.D. Pa. 2007) (*citing Gen. Refractories v. Fireman's Fund Ins. Co.,* 337 F.3d 297, 313 (3d Cir. 2003)). Moreover, the "intracorporate conspiracy doctrine" should extend to employees or officials acting in their official capacity. *Angelella v. Avvisato*, No. 3:15-CV-00511, 2016 WL 4379098, *11 (M.D. Pa. Sept. 17, 2016) (*citing* and *discussing Scott v. Bristol*, No. 90-1412, 1990 WL 178556, **6-8 (E.D. Pa. Nov. 14, 1990).

To state a § 1986 claim, a plaintiff must allege that: "(1) the defendant had actual knowledge of a section 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Clark v. Clabaugh,* 20 F.3d 1290, 1295 (3d Cir. 1994).

Section 1986 provides a derivative cause of action for those able to state a claim under section 1985 against persons who are aware of a conspiracy, but fail to intervene. "[T]he success of a section 1986 claim is contingent upon the existence of a viable section 1985 claim." *Murphy v. Yates,* No. Civ. A. 05-2552, 2005 WL 2989630, at *2 n. 2 (E.D. Pa. Aug. 8, 2005) (quoting *Moyer v. Borough of North Wales,* Civ. A. No. 00-1092, 2000 WL 875704, at *4 (E.D. Pa. June 22, 2000)). A § 1986 claim must be dismissed if the Complaint fails to establish a viable conspiracy under § 1985. *Toth v. Bristol Twp.,* 215 F. Supp. 2d 595, 599 (E.D. Pa. 2002). As such, Plaintiff's § 1986 claim should also be dismissed.

### D. Count I: Plaintiff Has Failed To Allege That He Pursued or Exhausted Administrative Remedies As Required To Maintain Suit Under Title VII or the PHRA.

A plaintiff must first file a timely administrative charge before bringing suit under Title VII. 42 U.S.C. § 2000e-5(e); *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001). A charge of discrimination must be filed within 180 days of the alleged unlawful employment practice, but a claimant who has cross-filed with a state or local agency has 300 days from the date of the adverse employment decision to file a claim with the EEOC. *Burgh*, 251 F.3d at 469. Similarly, "a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 P.S. §§ 959(a), 962). Failure to do so precludes judicial remedies under the PHRA. *Id.* (citing *Vincent v. Fuller Co.,* 616 A.2d 969, 974 (Pa. 1992)).

Plaintiff does not allege to have filed a charge with the EEOC or a complaint with the PHRC. More than 300 days have passed since the termination of Plaintiff's employment. This failure precludes any claims advanced by Plaintiff under Title VII or the PHRA.

"'A Rule 12(b)(1) motion is usually considered an appropriate vehicle when the plaintiff has failed to exhaust administrative remedies that are a prerequisite to his suit.'" *Rife v. Borough of Dauphin*, 625 F. Supp. 2d 212, 217 (M.D. Pa. 2008) (quoting *Johnson v. United States,* 147 F.R.D. 91, 94 (E.D. Pa. 1993)(internal citations omitted)).

> Plaintiff has failed to plead exhaustion of administrative remedies and procedures. This failure prevents the court from hearing this claim until the Plaintiff amends the complaint to allege exhaustion of administrative remedies and procedures under Title VII and the PHRA.

*Rife*, 625 F. Supp. 2d at 217.

For these reasons, the Court lacks subject matter jurisdiction over any Title VII or PHRA claims and should dismiss the same.

### E. Count II: Plaintiff Is Unable To Maintain A Cause of Action For Wrongful Discharge Under Pennsylvania Law.

Count II is for wrongful termination based on a violation of public policy "that discrimination against race, is prohibited." (Compl. ¶ 122). Moreover, Plaintiff states that "[t]here is a clear mandate that racial discrimination in the workplace regarding an employee's race is prohibited." (Compl. ¶ 123).

This cause of action has been foreclosed by the Pennsylvania Supreme Court. *Clay v. Advanced Computer Applications*, 559 A.2d 917 (Pa. 1989). Pennsylvania recognizes a public policy exception "'only in the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy.'" *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009) (*quoting Clay*, 559 A.2d at 918). Allegations of racial discrimination fail to meet the narrow public policy exception. *Weaver*, 975 A.2d at 564 (describing cases that fail to meet narrow exception); *see also Johnson v. Resources for Human Development, Inc.*, 789 F. Supp. 2d 595 (E.D. Pa. 2011).

Plaintiff's wrongful discharge claim would also be barred by governmental immunity. *Haiden v. Greene County Career & Tech. Ctr.*, No. 08-1481, 2009 WL 2341922 (W.D. Pa. July 27, 2009) ("Wrongful termination from employment is a common law tort claim that is not one of the exceptions to immunity . . . Pennsylvania state courts have held that wrongful termination claims against local agencies must be dismissed.")

> Wrongful termination is a common law tort claim that does not fall within the exceptions to immunity laid out in § 8542. *Haiden v. Greene,* No. 08 – 1481, 2009 U.S. Dist. Lexis 64409 at * 6, 2009 WL 2341922 (W.D. Pa. July 27, 2009). *See also, Snavely v. Arnold,* No. 08-2165, 2009 U.S. Dist LEXIS 51415

> at *22 n. 8, 2009 WL 1743737 (M.D. Pa. June 18, 2009) (citing *Lancine v. Giles,* 132 Pa.Cmwlth. 255, 572 A.2d 827, 830 (Pa.Commw.Ct.1990) (explaining wrongful discharge is not one of the articulated exceptions to 42 Pa.C.S.A. § 8541 – 8542).

*Palazzolo v. Damsker*, No. 10-CV-7430, 2011 WL 2601536, *5 (E.D. Pa. June 30, 2011).

Accordingly, Count II should be dismissed as Plaintiff has failed to set forth a viable claim for wrongful discharge.

### F. Counts III and IV: Plaintiff Is Unable To Maintain A Cause of Action For "Discrimination" or "Hostile Work Environment."

Counts III and IV do not identify any causes of action or a basis for any claim that is distinguishable from those addressed in Subsections A through E above, which are incorporated herein by reference. Accordingly, these claims must be dismissed as there is no common law right to pursue claims of "discrimination" or "hostile work environment."

### G. Count V: Plaintiff Has Failed to State a Claim for Intentional Infliction of Emotional Distress.

A state law claim for intentional infliction of emotional distress requires a plaintiff to establish four elements: "(1) the conduct must be extreme or outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 645 (E.D. Pa. 2014). Additionally, Pennsylvania law requires that some type of physical harm be shown in order to satisfy the severe emotional distress element. *DiLoreto v. Costigan*, 600 F. Supp. 2d 671, 691 (E.D. Pa. 2009). Extreme and outrageous conduct is conduct that is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable

in a civilized society." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (citation omitted).

In Count V, Plaintiff reiterates allegations of racial harassment, labelling these "actions" as "intentional, severe, pervasive" and "outrageous." The standard for establishing an I.I.E.D. claim in the employment context, however, is very stringent. In *Hoy v. Angelone,* 720 A.2d 745 (Pa. 1998), the Pennsylvania Supreme Court held that an individual defendant was not liable for the intentional infliction of emotional distress. *Id.* at 754–55. In that case, the defendant's behavior included "sexual propositions, vile and filthy language, off-color jokes, physical contact with the back of [the plaintiff's] knee, and the posting of sexually suggestive pictures." *Id.* at 747. While this conduct was "highly offensive and unacceptable," it was neither extreme nor outrageous enough to sustain an intentional infliction of emotional distress claim, especially because the plaintiff was not subject to retaliation for rejecting the defendant's propositions. *Id.* at 754–55.

After *Cox* and *Hoy*, Pennsylvania's state and federal courts have routinely dismissed I.I.E.D. claims in employment matters. Allegations of unlawful harassment or discriminatory termination do not rise to the level of a plausible claim. *McGlone v. Allegheny Valley School*, 556 F. Supp. 2d 498, 504 (E.D. Pa. 2008) (unlawful harassment does not present I.I.E.D. claim); *Nayak v. Voith Turbo, Inc.*, No. 1:14-cv-1053, 2016 WL 860664, *3-4 (M.D. Pa. Mar. 7, 2016) (allegations of serious incidents of harassment not sufficient to state an I.I.E.D. claim); *Capresecco v. Jenkintown Borough*, 261 F. Supp. 2d 319, 323-24 (E.D. Pa. 2003) (unlawful termination does not present cognizable I.I.E.D. claim)

In this matter, the well-pleaded factual allegations do not set forth a viable claim for I.I.E.D. *Cox*, 861 F.2d at 395; *Hoy*, 720 A.2d at 754-55.

**V.  CONCLUSION**

For the reasons set forth above, Plaintiff's Complaint in the above-captioned matter should be dismissed with prejudice.

WHEREFORE, Defendant respectfully requests that this Honorable Court grant its Motion to Dismiss and enter the Order proposed by Defendant.

                        CAMPBELL DURRANT BEATTY
                        PALOMBO & MILLER, P.C.

By:  s/ Brian P. Gabriel
     Brian P. Gabriel (PA 73132)
     535 Smithfield Street, Suite 700
     Pittsburgh, PA  15222
     TEL: (412) 395-1267
     FAX: (412) 395-1291
     bgabriel@cdblaw.com

Attorneys for Defendants, City of Greensburg, Greensburg Police Department, Sergeant Jason Gain, Patrolman Jason Dieter, Captain Robert Stafford, Mayor Robert Bell and Captain Chad Zucco

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on June 30, 2017, I electronically filed the foregoing **BRIEF IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will provide notification of the same to:

>Lawrence E. Bolind, Jr., Esq.
>bolindlaw@verizon.net
>238 Main Street
>Imperial, PA  15126
>*Attorney for Plaintiff*

>CAMPBELL DURRANT BEATTY
>PALOMBO & MILLER, P.C.


>By:   s/Brian P. Gabriel
>        Brian P. Gabriel

{DocNo=00502973.2 }