# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 17-550 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| THE CITY OF GREENSBURG, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Pending before the Court is Defendants' Motion to Dismiss (Doc. 4) Plaintiff's Complaint in its entirety (Doc. 1). For the reasons that follow, Defendants' Motion to Dismiss will be **GRANTED** as to the following claims, which will be dismissed with prejudice:

- Plaintiff's claims under the 42 U.S.C. §1983 (Fourth Amendment), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA");

- Plaintiff's claims for wrongful termination under Pennsylvania common law;

- Plaintiff's claims for "discrimination," and "hostile work environment"; and

- Plaintiff's claim for intentional infliction of emotional distress under Pennsylvania common law.

Defendants' motion also will be **GRANTED** as to Plaintiff's claims under 42 U.S.C. §§ 1985 and 1986, without prejudice to Plaintiff filing an amended complaint that properly asserts these claims.

Defendants' motion will be **DENIED** as to all remaining claims. Specifically, Plaintiff's claims under 42 U.S.C. §1983 (Fourteenth Amendment Equal Protection and Due Process claims, §1981 employment discrimination claims) will be allowed to proceed.

**BACKGROUND**

Plaintiff Justin Adams, an African-American police officer with the Greensburg Police Department, alleges that he faced severe and pervasive race-based harassment at work and that he ultimately was terminated because of his race. (Complaint, ¶¶ 112-113, Doc. 1.) Defendants are police officers employed by the Greensburg Police Department, specifically, Sergeant Jason Gain ("Sergeant Gain"), Patrolman Jason Dieter ("Patrolman Dieter"), and Captain Robert Stafford ("Captain Stafford"); Chad Zucco ("Chief Zucco"), the Greensburg Chief of Police; Robert L. Bell ("Mayor Bell"), the Mayor and City Council President of Greensburg; the Greensburg Police Department ("GPD"); and the City of Greensburg ("Greensburg""). (Complaint, ¶¶ 2-7, 41, 61.)

To state the relevant allegations, Plaintiff's Complaint alleges the following. Plaintiff was hired by the GPD as a full-time officer on June 21, 2015, through the civil service process. (Id. at ¶¶ 9, 13, 15). Throughout his employment, he was the only African-American employee at the police department. (Id. at ¶ 99.) During the first weeks of his employment, Plaintiff alleges that disparaging comments were directed at him relating to his skin color, including "[t]here was one black guy here prior to you for a reason," and "[y]ou know that you can't talk like 'them' while in uniform." (Id. at ¶¶ 20-22.)

Following his hire, the GPD sent Plaintiff undercover "to African American beer gardens . . . to buy drugs." (Id. at ¶ 17.) Patrolman Dieter told Plaintiff that he was good at identifying African-American suspects because "they all look the same." (Id. at ¶ 19.) Patrolman Dieter allegedly made additional disparaging comments concerning Plaintiff's race, such as a comment at a firearms training in mid-September 2015, in front of superior officers including Captain Stafford, telling Plaintiff "you know that we don't hold our gun sideways when we shoot, right?"

2

(Id. at ¶ 61.) On or about January 14, 2016, Patrolman Dieter allegedly asked Plaintiff why "his people" could say the "'N' word?" (Id. at ¶ 63.) Later, on or about April 9, 2016, Patrolman Dieter allegedly told Plaintiff that "[i]t's embarrassing to us when you play that kind of 'stuff' when coming to work," referring to the hip-hop music Plaintiff was playing in his car while arriving at the police station. (Id. at ¶¶ 71-72.) At some point during his employment, in the course of a dinner provided to officers gathered in a break room, Patrolman Dieter allegedly loudly stated "I bet you are disappointed that it is not fried chicken!" causing officers in the room to laugh at Plaintiff. (Id. at ¶¶ 74-76.)

In addition to these comments from Patrolman Dieter, Plaintiff alleges that throughout his employment Sergeant Gain would make derogatory remarks about his race, in public or in front of Plaintiff's superiors. (Id. at ¶¶ 49-51.) For example, he alleges that Sergeant Gain told him, while standing outside of a gas station, that more black people would be able to join the police force "if they weren't so busy doing drugs, and getting arrested." (Id. at ¶¶ 65-66.)

A fellow officer, not a Defendant in this case, allegedly told Plaintiff, in the presence of supervisors, that "if a black man needs a' killing, you are going to have to do it!" to avoid a situation in which the GPD would "make the news." (Id. at ¶¶) 96-98.)

Plaintiff states that, at various times, he asked his superiors for relief from this pattern of behavior, and from the distress he was experiencing. (Id. at ¶ 79.) However, no actions were taken to remedy the situation. (Id. at ¶¶ 87, 100.)

On April 27, 2016, Chief Zucco terminated Plaintiff's employment in a meeting with Captain Stafford and another officer. (Id. at ¶¶ 80-82.) None of the reasons provided for Plaintiff's termination had been previously written up or reprimanded, as required by the GPD's Standard Operating Procedure Manual. (Id. at ¶ 86.)

3

Based on these facts, Plaintiff's Complaint contains five counts, which collectively assert numerous civil rights claims against all Defendants. Specifically, in Count I, Plaintiff asserts violations of (a) the Equal Protection[1] and Due Process Clauses of the Fourteenth Amendment, (b) the Fourth Amendment's prohibition of unreasonable seizures, (c) 42 U.S.C. §§ 1981, 1985, and 1986, (d) Title VII of the Civil Rights Act of 1964 ("Title VII"), and (e) the Pennsylvania Human Relations Act ("PHRA"). In Count II, Plaintiff asserts a claim of wrongful discharge under Pennsylvania common law. In Counts III and IV, Plaintiff asserts, respectively, a claim of "discrimination" and a claim of "hostile work environment." In Count V, Plaintiff asserts a Pennsylvania law claim for intentional infliction of emotional distress.

**ANALYSIS**[2]

   **I.**   **Claims for Civil Rights Violations under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the Constitution or the laws of the United States, and that the alleged deprivation was

---

[1] While Plaintiff does not cite the Equal Protection Clause in his Complaint, his allegations in Count 1 include "that Plaintiff's race played an important role in Plaintiff's ostracization, mistreatment, and last alleged poor job evaluation, that lead [sic] to Plaintiff's unlawful termination," (Complaint, ¶ 111), that "Defendants purposefully created a racially hostile environment that destabilized Plaintiff's performance," (Id. at ¶ 112), and that "Plaintiff's race was the main reason for Plaintiff's termination," (Id. at ¶ 113). A core component of Plaintiff's Fourteenth Amendment claim is thus that he was treated unequally by public officials because of his race—which is the essence of an Equal Protection claim. See Johnson v. Fuentes, 704 Fed. App'x 61, 65 (3d Cir. 2017). In addition, Plaintiff's Complaint cites 42 U.S.C. § 1985, which creates a federal cause of action for a conspiracy "for the purpose of depriving . . . any person or class of persons of the equal protection of the laws." In light of this, the Court will treat Plaintiff's Complaint as claiming relief, in part, under the Equal Protection Clause of the Fourteenth Amendment.

[2] In deciding whether to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must take as true all of the well-pleaded facts in the complaint, Fowler v. UPMC Shadyside, 578 F.3d 201, 211 (3d Cir. 2009), and determine whether these facts raise a reasonable expectation that discovery will reveal the evidence necessary to prove each element of plaintiff's claims, Thompson v. Real Estate Mortgage Network, 748 F.3d 142, 147 (3d Cir. 2014).

committed by a person acting under color of state law.  See Mosca v. Cole, 217 Fed. App'x 158, 163 (3d Cir. 2007).  Plaintiff has alleged violations of several rights secured by the Constitution and laws of the United States.  The Court will take each of these claims in turn and address whether they are sufficiently stated to withstand Defendants' Motion to Dismiss.

      *A.  Fourteenth Amendment: Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV § 1.  "The central purpose of the Clause is to prevent the States from purposely discriminating between individuals on the basis of race."  Johnson v. Fuentes, 704 Fed. App'x 61, 65 (3d Cir. 2017) (internal citations and quotation marks omitted).  The elements of a valid § 1983 claim for a denial of Equal Protection based on intentional racial animus are that: (1) the plaintiff belongs to a protected class; (2) the defendant acted under color of state law; and (3) the defendant treated plaintiff differently because of his race.  Id.  There are multiple ways for a plaintiff to prove such a claim, including through race-based comments that reveal a discriminatory motive underlying an adverse employment action.  Id. at 66 (citing Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 368-69 (3d Cir. 2008)).

Here, Plaintiff alleges that he is black, that Defendants were public officials acting in accordance with their roles or as city entities, and that Defendants intentionally treated him with racial hostility throughout his employment, eventually terminating him because of his race.  Defendants do not address the Equal Protection Clause of the Fourteenth Amendment in their arguments supporting their Motion to Dismiss, and do not attempt to demonstrate why an Equal Protection claim would not survive.  (See Defendants' Brief in Support of Motion to Dismiss,

hereinafter "Brief Supporting MTD," Doc. 5). As a result, the Court will not dismiss Plaintiff's Equal Protection claim.

   B. *Fourteenth Amendment: Due Process*

The Fourteenth Amendment's Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. There are two steps to properly asserting a procedural due process claim based on a deprivation of property: (1) alleging a deprivation of a property interest that is encompassed within the scope of the Fourteenth Amendment, and (2) alleging that the procedures attendant to the deprivation were constitutionally deficient. See Iles v. de Jongh, 638 F.3d 169, 173 (3d Cir. 2011) (internal citation omitted).

Police officers' property interest in their employment status is a matter of state law. Bishop v. Wood, 426 U.S. 341, 344 (1976); see Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Under Pennsylvania law, police officers' property interest in their employment is determined by whether an officer "can establish a legitimate expectation of continued employment through either a contract or a statute." Toth v. Bethel Township, 268 F. Supp. 3d 725, 731 (E.D. Pa. 2017) (quoting Pipkin v. Pa. State Police, 693 A.2d 190, 192 (Pa. 1997)). The nature of a city officer's interest thus depends on a fact-sensitive inquiry into the applicable city ordinance and the officer's status under that ordinance. Cf. Bishop, 426 U.S. at 344-46 (analyzing city ordinance setting conditions of dismissal for police officers and resolving protection of employment interest based on the district judge's construction of a city ordinance).

The City Charter of the City of Greensburg has a provision applicable to police officers' "demotions" that incorporates the civil service rules in Pennsylvania's Third Class City Code. 365 Pa. Code § 11.12-1202 (2017) ("The Mayor will promote and demote police officers in

accordance with existing civil service and Third Class City Code and any collective bargaining agreement."). The civil service rules in the Third Class City Code state that, barring riot or emergency, "[a]ll appointments made pursuant to the provisions of this chapter shall be for and during good behavior, and no employee hired pursuant to the provisions of this chapter shall be removed or transferred for any political reasons." 11 Pa. Cons. Stat. § 14407(a). The Code enumerates valid reasons for discharge as follows: "all employees subject to civil service shall be subject to suspension, discharge and discipline . . . for misconduct or violation of any law of this Commonwealth, ordinance of the city or regulation of the department." 11 Pa. Cons. Stat. § 14408(a)(1).[3] This language, if it applies to Plaintiff's position, would be sufficient to create a protected property interest in continued employment. Cf. Parker v. City of Williamsport, 406 F. Supp. 2d 534, 549 (M.D. Pa. 2005) (comparable provision of the Third Class City Code applicable to firefighters created a protected property interest for probationary firefighters).

However, the parties have not briefed the issue of whether the Greensburg City Charter and Pennsylvania's Third Class City Code create a constitutionally protected property interest in continued employment for Greensburg's probationary police officers. Plaintiff's Complaint merely alleges that "Plaintiff could not be legally terminated through the civil service process." (Complaint, ¶ 113). And Defendants' argument for dismissal rests on a case, Bartal v. Borough of Laureldale, 515 F. Supp. 2d 556, 561-62 (E.D. Pa. 2007), applying a provision of the Pennsylvania Borough Code that does not, by its terms, extend to the City of Greensburg. (See Brief Supporting MTD, pp. 9-10.) As a result, it is premature for the Court to reach a conclusion

---

[3] The Third Class City Code has recently been amended and reorganized. The citations above refer to the current version of the Code; the relevant provisions in the former version, in effect at the time of Plaintiff's hiring, are identical to the current version cited above. See 53 Pa. Stat. Ann. §§ 39407, 39408 (2014).

7

as to whether Plaintiff had a protected property interest in continued employment. For now, the Court finds that Plaintiff has sufficiently alleged a protected property interest in his employment as a police officer to withstand Defendants' Motion to Dismiss.

To satisfy the second prong for asserting a procedural due process violation, a plaintiff must allege that he was not given notice and an opportunity to be heard prior to the deprivation of his property interest—that is, prior to his termination. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). Plaintiff alleges that he was given no relevant notice whatsoever prior to the meeting at which he was terminated. (Complaint, ¶¶ 82-86, 110). Therefore, the Court will not dismiss Plaintiff's Due Process claim.

### C. Fourth Amendment: Seizure of Employment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment does not protect continued employment as a property interest subject to "seizure."[4] The Court also agrees with Defendants that an employee's discharge simply falls outside the ambit of the Fourth Amendment—firing an employee does not involve a search or a seizure. (Brief Supporting MTD, p. 11). As a result, Plaintiff's Fourth Amendment claim will be dismissed with prejudice.

---

[4] Plaintiff does not identify a single case holding that employment is an interest that may be "seized" under the Fourth Amendment via termination. The Court notes that the Amendment's language ("persons, houses, papers, and effects") does not, on its face, include property interests such as employment.

D. *Employment Discrimination under 42 U.S.C. § 1981*

Plaintiff's Complaint cites 42 U.S.C. § 1981[5] as a basis for one or more of the claims in Count I, without specifying which facts align with this claim. (Complaint, pp. 1, 10.) Defendants do not address, or cite to, § 1981 in their brief arguing for dismissal of the Complaint. (See Brief Supporting MTD.) As far as the Court can discern, the facts underlying Plaintiff's § 1981 claim are identical to the facts underlying his Title VII and PHRA claims; Plaintiff makes no attempt to distinguish between these theories of liability in his Complaint. This would make sense in light of the holding of the Court of Appeals for the Third Circuit that "the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009) (citing Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999)). Unlike claims under Title VII and the PHRA, however, claims under § 1981 do not require exhaustion of administrative remedies, see Johnson v. Railway Exp. Agency, Inc., 421 U.S. 454, 460-61 (1975), and the applicable statute of limitations is four years, Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-83 (2004).

Defendants' only argument for dismissal concerning Plaintiff's substantive claims of employment discrimination are that Plaintiff failed to exhaust administrative remedies. (See Brief Supporting MTD, pp. 13-14.) As discussed above, this argument is inapplicable to Plaintiff's claim under § 1981. Therefore, the Court will not dismiss this claim.

---

[5] In relevant part, § 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a), (b).

## II. Conspiracy Claims under 42 U.S.C. §§ 1985(3)[6] and 1986

Sections 1985(3) and 1986 make it unlawful, respectively, to conspire to deprive individuals of the equal protection of the laws and, for people with the power to stop such conspiracies, to knowingly fail to aid in preventing them.[7] Both provisions depend on the existence of a conspiracy, "the principal element of which is an agreement between the parties." Russo v. Voorhees Tp., 403 F. Supp. 2d 352, 359 (D.N.J. 2005). In stating such a claim, "the plaintiff may not merely make conclusory allegations of conspiracy." Grigsby v. Kane, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) (citing Rogers v. Mount Union Borough, 816 F. Supp. 308, 314 (M.D. Pa. 1993)). Instead, Plaintiff must "plead that an actual agreement existed among the parties." Muhammad v. Cappellini, 477 Fed. App'x 935, 938 (3d Cir. 2012).

Plaintiff's principal allegation relevant to the existence of an agreement among the parties is as follows:

> Being that the several Defendants acted in concert, by building upon the hostile racist comments and that city and police department supervisors also participated in, encouraged or enjoyed the results of the hostile and humiliating racist remarks directed towards the Plaintiff, a constructive conspiracy was present between all Defendants.

---

[6] There are three distinct subsections under 42 U.S.C. § 1985 and Plaintiff does not specify which subsection, or subsections, form the basis of his claim—from context, however, it is clear that Plaintiff intends to assert only a claim under § 1985(3).

[7] Specifically, to state a § 1985(3) conspiracy claim, "a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997) (citing Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971)). Section 1986 states that "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured." 42 U.S.C. § 1986.

10

(Complaint, ¶ 114). This allegation does not pass muster. At no point does Plaintiff allege the existence of an agreement to deprive Plaintiff of rights or show, through his factual allegations, why an agreement should be inferred among Defendants.

Plaintiff does not meaningfully dispute the relevant standard for stating a conspiracy claim under §§ 1985(3) and 1986, but argues that "all parties openly, and publically worked in concert and individually to harass and intimidate Justin Adams." (Plaintiff's Brief Opposing Motion to Dismiss, hereinafter "Brief Opposing MTD," p. 11, Doc. 12.) When it comes to a concerted action theory, a valid conspiracy claim may be stated somewhat indirectly if an agreement can be inferred from a collective process in which the relevant parties are decisionmakers. See, e.g., Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993). However, Plaintiff's allegations throughout the Complaint show only individual actions. As a result, the Court will grant Defendants' Motion to Dismiss as to Plaintiff's claims under 42 U.S.C. §§ 1985 and 1986 without prejudice. The Court will grant Plaintiff leave to file an amended complaint, if Plaintiff wishes, to supplement his factual allegations to plausibly allege the existence of a conspiracy.

### III. Employment Discrimination Claims under Title VII and the PHRA

As noted above, claims under Title VII and the PHRA are subject to timeliness and exhaustion of administrative remedies requirements. 42 U.S.C. § 2000e-5(e)(1); 43 Pa. Stat. Ann. § 959(a), (h); Burgh v. Borough Council of Montrose, 251 F.3d 465, 469-70 (3d Cir. 2001) (Title VII); Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) (PHRA). If administrative remedies are not pursued within the time-limit for doing so, then the claims are time-barred. Burgh, 251 F.3d at 471; Woodson, 109 F.3d at 925. Specifically, claims must be filed with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania

Human Relations Commission ("PHRC") within 180 days of the alleged discrimination. Burgh, 251 F.3d at 469; Woodson, 109 F.3d at 925. Plaintiff concedes that he has never filed claims with the EEOC or the PHRC and that the time to do so has elapsed. (Brief Opposing MTD, p. 14.) Despite this, Plaintiff requests that he be allowed to proceed with this Title VII and PHRA claims in this lawsuit and file his EEOC claims "*Nunc Pro Tunc*." (Id. at p. 15.) The Court denies this request, as Plaintiff presents no valid grounds for tolling the relevant filing period. Accordingly, Plaintiff's claims under Title VII and the PHRA will be dismissed with prejudice.

### IV. Wrongful Discharge under Pennsylvania Common Law

Pennsylvania common law claims for wrongful discharge on the basis of race have been preempted by the state's statutory scheme (the PHRA) for handling precisely this form of employment discrimination. See Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 918 (Pa. 1989) ("the PHRA provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon discrimination"); cf. Weaver v. Harpster, 975 A.2d 555, 570 (Pa. 2009) (finding no common law cause of action applicable to at-will employees terminated on the basis of sex because doing so would "disturb the administrative scheme of the PHRA" and "would result in a two-tier system").

As a result, Plaintiff's common law claim for wrongful discharge will be dismissed with prejudice.

### V. "Discrimination" and "Hostile Work Environment" Claims

Defendants argue that Plaintiff's asserted claims of "discrimination" and "hostile work environment," without citation to authority, in Counts III and IV of the Complaint, duplicate Plaintiff's other claims. (Brief Supporting MTD, p. 16.) Plaintiff, offering no argument in response, apparently concedes this point. (See Brief Opposing MTD.) Therefore, the Court

concludes that these claims are duplicative and Plaintiff's claims under Counts III and IV are dismissed with prejudice.

## VI. Intentional Infliction of Emotional Distress

The standard for establishing a Pennsylvania common law claim for intentional infliction of emotional distress ("IIED") requires conduct that was: "(1) extreme and outrageous; (2) intentional or reckless; and (3) caused severe emotional distress." Hargraves v. City of Philadelphia, 2007 WL 1276939, at *3 (E.D. Pa. Apr. 26, 2007). IIED claims often flounder on the first element of this test because the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A. 2d 1122, 1125 (Pa. Super. Ct. 1987)). Particularly in the employment context, sufficiently outrageous conduct is "extremely rare" and does not include dismissal of an employee "with an improper motive." Cox, 861 F.2d at 396. Sufficiently outrageous conduct also does not include, without more, dismissal by virtue of a racially hostile work environment or racial discrimination. See Hargraves, 2007 WL 1276939, at *3 (collecting cases); accord Long v. Pizza Hut (Store #635008), 2003 WL 23019186, at *6 (W.D. Pa. Nov. 5, 2003) (Report and Recommendation), adopted in relevant part, (Nov. 25, 2003) (collecting cases).

Defendants argue that the facts of this case do meet Pennsylvania's extremely high bar for outrageousness. (Brief Supporting MTD, pp. 16-17.) Plaintiff does not respond to Defendants' arguments on IIED. (See Brief Opposing MTD.) The Court finds that the facts alleged in the Complaint, while atrocious, do not meet the standard for IIED under Pennsylvania law. Therefore, Plaintiff's claim of IIED will be dismissed with prejudice.

13

* * *

For the reasons set forth above, Defendants' Motion to Dismiss (**Doc. 7**) is **GRANTED** in part and **DENIED** in part.

Accordingly, the following claims hereby are **DISMISSED** with prejudice:

- Plaintiff's claims under 42 U.S.C. § 1983 (Fourth Amendment), Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act;

- Plaintiff's claim for wrongful termination under Pennsylvania common law;

- Plaintiff's claims for "discrimination" and "hostile work environment"; and

- Plaintiff's claim for intentional infliction of emotional distress under Pennsylvania common law.

Plaintiff's claims under 42 U.S.C. §§ 1985 and 1986 are **DISMISSED** without prejudice to Plaintiff filing an amended complaint that properly asserts these claims. Plaintiff's deadline for filing an amended complaint, if Plaintiff wishes to do so, shall be **March 30, 2018**. This will be Plaintiff's final opportunity to amend his claims under 42 U.S.C. §§ 1985 and 1986. If Plaintiff does not file an amended complaint by March 30, 2018, these claims will be dismissed with prejudice.

Defendants' Motion to Dismiss is **DENIED** as to all remaining claims.

IT IS SO ORDERED.

March 14, 2018　　　　　　　　　　　　　　　　s\Cathy Bissoon
　　　　　　　　　　　　　　　　　　　　　　Cathy Bissoon
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

cc (via ECF email notification):

All Counsel of Record